# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AGSECURITY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. CIV-12-590-M ) |
| AFFILIATED FOODS, INC., | ) ) |
| Defendant. | ) |

## ORDER

This case is scheduled for trial on the Court's January 2014 trial docket.

Before the Court is defendant Affiliated Foods, Inc.'s Motion for Summary Judgment, filed August 27, 2013. On September 17, 2013, plaintiff filed its response. On September 24, 2013, defendant filed its reply, and on October 3, 2013, plaintiff filed its sur-reply. Based upon the parties' submissions, the Court makes its determination.

I.      Introduction

In this action, plaintiff seeks to recover the amount paid in settlement of an earlier lawsuit filed against its insured and its insured's employees. On September 13, 2009, a minor was injured in a grocery market located in Okeene, Oklahoma (the "Okeene Market") when a shelf from a free-standing shelving unit, called an endcap (the "subject endcap"), allegedly fell on her. The subject endcap was generally comprised of a base, seven shelves, two side supports, and a red pegboard, and it contained candy and abutted the gondola[1] between aisles 1 and 2 of the Okeene Market. The subject endcap was not anchored to anything at the time of the incident.

---

[1] A gondola is a two-sided shelving unit that runs the length of an aisle, and an endcap is a one-sided shelving unit that abuts the end of a gondola.

Plaintiff's insured owned the Okeene Market at the time of the incident. On January 10, 2010, the minor's parents filed a lawsuit against plaintiff's insured and its insured's employees, alleging that the minor suffered a brain injury as a result of the direct negligence of plaintiff's insured and its insured's employees, namely, their failure to keep and maintain a safe premises. Plaintiff later settled the lawsuit filed by the minor's parents.

Plaintiff's insured had purchased the Okeene Market from a woman named Patricia Kubat on or about August 24, 2009. Plaintiff's insured did not inspect the subject endcap between the time it purchased the Okeene Market and the incident involving the minor.

Ms. Kubat purchased the Okeene Market in late 2003, and that purchase included the shelving equipment then existing within the Okeene Market.[2] At the time, the Okeene Market was divided into two shopping areas – a north shopping area and a south shopping area. It also possessed a separate "back area" and a separate "back room." All of the shelving equipment that Ms. Kubat purchased was disassembled and placed in the "back area" so that new tile could be installed in the north and south shopping areas. After the tile was installed, a majority of the disassembled shelving equipment was moved to the south shopping area, but some remained in the "back area."[3]

Ms. Kubat chose defendant as a distributor for the Okeene Market, and since it was a new store, defendant assisted her with the initial store setup. A representative of defendant, Danny Jackson, visited the Okeene Market in January of 2004. He took measurements to create a store

---

[2]The shelving equipment that Ms. Kubat purchased included a single red pegboard.

[3]Defendant was not involved in the process of disassembling the shelving equipment and moving it to the "back area" or involved in moving the shelving equipment to the south shopping area.

layout diagram for the north and south shopping areas and looked at the shelving equipment in the south shopping area to determine what was on hand. Mr. Jackson eventually prepared the store layout diagram, which Ms. Kubat kept in her files. The store layout diagram depicted an endcap for display of candy in the same location as the subject endcap. After Mr. Jackson completed the store layout diagram, defendant sent a three-man crew to assemble shelving units from the disassembled equipment and to set product on the shelves of the assembled shelving units. The members of defendant's three-man crew have testified (1) that they were unable to complete the Okeene Market according to the store layout diagram due to a shortage of shelving equipment parts and (2) that they were not involved in any way with the subject endcap's assembly. Further, invoices produced by Ms. Kubat show that "candy-gum" in the amount of $2,190.60 was delivered to the Okeene Market in January 2004, but the invoices do not state the type or quantity of "candy-gum" delivered.

Ms. Kubat has testified regarding two instances where the subject endcap "tilted" forward after being assembled. One occurred while she was climbing on the unit, and the other instance occurred while her employee, Rachel Pavlu, was standing on the third or fourth shelf. Another employee of Ms. Kubat, who later became an employee of plaintiff's insured, Jennifer Tambunga, testified that the subject endcap was a "little bit wobbly." She testified that she told Ms. Kubat that the subject endcap "wobbled" but that she never subsequently told plaintiff's insured. Ms. Kubat testified that she did not remember Ms. Tambunga telling her that the subject endcap wobbled.

On April 3, 2012, plaintiff filed the instant action against defendant. As the basis for its recovery against defendant, plaintiff contends that defendant was involved in some way with the assembly of the subject endcap and acted negligently. Defendant now moves for summary judgment.

II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    Discussion

Defendant asserts that plaintiff cannot prove that defendant had any involvement with the assembly of the subject endcap. Defendant further asserts that even if plaintiff could prove that defendant had some involvement with the assembly of the subject endcap, defendant cannot be held responsible for the incident as a matter of law. Specifically, defendant contends that it owed no duty to the minor as a matter of public policy and that the intervening negligence of third parties broke the chain of causation because such negligence was unforeseeable as a matter of law. Alternatively,

if the Court declines to enter judgment in favor of defendant at this time, defendant asserts that the Court should dismiss with prejudice plaintiff's claim for indemnity[4] and its claim for reimbursement of costs and attorney's fees incurred in connection with the minor's parents' lawsuit.

    A.    <u>Involvement with the assembly of the subject endcap</u>

Because underlying each of plaintiff's theories of recovery is the contention that defendant was involved in some way with the subject endcap, defendant contends that it is entitled to summary judgment because plaintiff cannot come forward with sufficient evidence to create a genuine issue as to whether defendant had some involvement with the assembly of the subject endcap. The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether defendant had some involvement with the assembly of the subject endcap. Specifically, the Court finds that based upon the testimony of Ms. Kubat, the store layout diagram, and the candy invoices, a jury could conclude that defendant was involved in some way with the assembly of the subject endcap. Additionally, whether the testimony of defendant's three-man crew is believable is a credibility determination that must be made by the jury.

Accordingly, the Court finds that defendant is not entitled to summary judgment on this basis.

---

[4]On September 24, 2013, the parties filed a Joint Stipulation of Partial Dismissal without Prejudice, dismissing plaintiff's Second Cause of Action for Indemnity.

5

B. Whether defendant owed no duty to the minor as a matter of public policy

Defendant contends that based upon the "accepted work doctrine," it owed no duty to the minor as a matter of public policy. Under the "accepted work doctrine,"

> an independent contractor who has turned over his work and had it accepted by the owner is not subject to liability to third parties injured by the defective condition of the work. Liability, if any, is placed on the owner who has maintained or used the property in its defective condition, and the contractor's liability, if any, is solely to the owner for breach of contract.

*Pickens v. Tulsa Metro. Ministry*, 951 P.2d 1079, 1088 (Okla. 1997). However, one of the well-established exceptions to the "accepted work doctrine" provides:

> where the contractor has wilfully created a condition which he knows, or by the exercise of ordinary diligence should have known, to be immediately and certainly dangerous to persons other than the contractee, who will be necessarily exposed to such danger, considerations of public policy do not require the application of the general rule.

*Creamer v. Bucy*, 700 P.2d 668, 670-71 (Okla. Civ. App. 1985). However,

> [i]f after acceptance, the contractee maintains a structure in a dangerously defective condition such action constitutes an intervening efficient cause, but the causal connection between the contractor's original negligence and a subsequent injury is not broken if the contractor could reasonably have anticipated that such intervening cause or a similar one would intervene in a way likely to cause an injury similar to that actually suffered.

*Greenwood v. Lyles & Buckner, Inc.*, 329 P.2d 1063, 1063-64 (Okla. 1958).

Defendant asserts that Ms. Kubat learned after the subject endcap was installed that it was unstable; yet, she continued to use it without ever taking any steps to correct its instability. Defendant, therefore, contends that assuming plaintiff's allegations are correct regarding defendant's installation of the subject endcap, Ms. Kubat maintained the subject endcap in a dangerously

6

defective condition after acceptance of defendant's work, and such action constitutes an intervening efficient case.

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, and assuming the "accepted work doctrine" is applicable to this case,[5] the Court finds that there is a disputed issue of material fact as to the extent of Ms. Kubat's knowledge regarding the instability of the subject endcap and a disputed issue of material fact as to whether Ms. Kubat's failure to correct the subject endcap's instability was reasonably foreseeable to defendant. Specifically, there is conflicting evidence as to how much Ms. Kubat knew about the instability of the subject endcap and the possible consequences of its wobbling. Additionally, plaintiff has presented evidence that Ms. Kubat was an inexperienced store owner, did not know how to install the subject endcap, and relied upon the expertise and advise of defendant.

Accordingly, the Court finds that defendant is not entitled to summary judgment on this basis.

C.    Intervening negligence

Defendant contends that even if it was involved in the assembly of the subject endcap, the intervening negligent conduct of third parties broke the chain of causation. Specifically, defendant asserts that if Ms. Kubat or plaintiff's insured became or should have become aware of the dangerous condition of the subject endcap, and was in a position to deal with it, her/its failure to act reasonably would be unforeseeable to defendant and would break the chain of causation. As set

---

[5]In its response, plaintiff asserts that the "accepted work doctrine" has been abandoned by Oklahoma courts.

forth above, there is a disputed issue of fact as to whether or not Ms. Kubat or plaintiff's insured knew or should have known about the instability of the subject endcap and whether or not their failure to correct the subject endcap's instability was reasonably foreseeable to defendant.

Accordingly, the Court finds that defendant is not entitled to summary judgment on this basis.

D. Costs and attorney's fees

Defendant contends that as a matter of law plaintiff is not entitled to reimbursement for costs and attorney's fees incurred in connection with the minor's parents' lawsuit. Specifically, defendant asserts that plaintiff's insured and its insured's employees have no right to costs because they can never be "a prevailing party" in either the minor's parents' lawsuit, which was settled, or this lawsuit, to which they are not a party. Defendant further asserts that attorney's fees are not recoverable as damages in a contribution action, and there are no applicable statutes awarding attorney's fees as costs to a prevailing party in a contribution action.

"A subrogee acquires no rights greater than those of the party whose claim it has paid." *Emp'rs Mut. Cas. Co. v. Mosby*, 943 P.2d 593, 595 (Okla. 1997). Thus, plaintiff must prove that its insured and its insured's employees are entitled to recover costs and attorney's fees from defendant. The Oklahoma Supreme Court has held:

> where the wrongful acts of the defendant have involved the plaintiff in litigation with others, or have placed him in such relation with others as to make it necessary for him to incur attorney fees to protect his interests, attorney fees [are] recoverable in such cases as one of the elements of damages flowing from the original wrongful act of the defendant.

*Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 181 (Okla. 2000). To the extent plaintiff is making an equitable subrogation claim, and if the jury ultimately finds that defendant was

8

negligent and plaintiff's insureds were fault free, the Court finds that plaintiff could recover the costs and attorney's fees of its insured and insured's employees incurred in the minor parents' lawsuit.

Additionally, the Oklahoma Supreme Court has held that "no basis exists for recovery of attorney's fees in a contribution action." *Nat'l Union Fire Ins. Co. v. A.A.R. W. Skyways, Inc.*, 784 P.2d 52, 58 (Okla. 1989). Therefore, the Court finds plaintiff is not entitled to the attorney's fees incurred in the minor's parents' lawsuit as an element of damages for its contribution claim.

IV. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART defendant's Motion for Summary Judgment [docket no. 29] as follows:

(A) The Court GRANTS the motion for summary judgment as to plaintiff's entitlement to the attorney's fees incurred in the minor's parents' lawsuit as an element of damages for its contribution claim, and

(B) The Court DENIES the motion for summary judgment in all other respects.

**IT IS SO ORDERED this 29th day of October, 2013.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE